UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

04 10819 NG

| | |
|---|---|
| DEAN DUMMER, individually and on behalf of all others similarly situated, | CIVIL ACTION NO. |
| Plaintiff, | CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS |
| v. | |
| VASO ACTIVE PHARMACEUTICALS, INC., JOHN J. MASIZ, JOSEPH FRATTAROLI and STEPHEN G. CARTER, | JURY TRIAL DEMANDED |
| Defendants. MAGISTRATE JUDGE Bowler | |

RECEIPT # 55510
AMOUNT $150
SUMMONS ISSUED
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY. CLK. F.O.M
DATE 4/26/04

Plaintiff Dean Dummer, individually and on behalf of all other persons similarly

situated, by plaintiff's undersigned attorneys, for plaintiff's Complaint, alleges upon the

investigation made by and through plaintiff's counsel, which included, *inter alia*, a

review of relevant public filings made by Vaso Active Pharmaceuticals, Inc. ("Vaso

Active" or the "Company") with the Securities and Exchange Commission (the "SEC"),

as well as tele-conferences, press releases, news articles, analyst reports, and media

reports concerning the Company. This complaint is based upon plaintiff's personal

knowledge as to plaintiff's own acts, and upon information and belief as to all other

matters, based upon the aforementioned investigation.

## SUMMARY OF ACTION

1.    This is a class action on behalf of all persons, other than defendants, who

purchased Vaso Active securities during the period from December 11, 2003 to March

31, 2004, inclusive (the "Class Period") to recover damages caused by defendants'

violations of the federal securities law.

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 10(b) and

20(a) of the Exchange Act [15 U.S.C. §§ 78j(b) and 78t(a)] and Rule 10b-5 promulgated

thereunder by the SEC [17 C.F.R. § 240.10b-5].

3.      This Court has jurisdiction over the subject matter of this action pursuant

to 28 U.S.C. §§ 1331 and 1337 and Section 27 of the Exchange Act [15 U.S.C. § 78aa].

4.      Venue is proper in this District pursuant to Section 27 of the Exchange Act,

and 28 U.S.C. § 1391(b).  Many of the acts and practices complained of herein occurred

in substantial part in this District and Vaso Active maintains its corporate headquarters in

this District.

5.      In connection with the acts alleged in this complaint, defendants, directly

or indirectly, used the means and instrumentalities of interstate commerce, including, but

not limited to, the mails, interstate telephone communications and the facilities of the

national securities markets.

## PARTIES

6.      Plaintiff Dean Dummer purchased shares of Vaso Active common stock

and thus suffered economic damages.

7.      Vaso Active is a Delaware corporation with its principal place of business

located at 99 Rosewood Drive, Suite 260, Danvers, Massachusetts 01923.  Vaso Active is

an early-stage company focused on commercializing, marketing and selling over-the-

counter (OTC) pharmaceutical products, with a particular focus on drugs that incorporate

the Vaso Active lipid encapsulated, or VALE, transdermal delivery technology.

8.      The defendants listed below served, during the period specified, as senior

officers and/or directors of Vaso Active:

2

(a)    Defendant John Masiz ("Masiz") is, and was at all relevant times, Chief Executive Officer, President, and Chairman of the Board.

(b)    Defendant Joseph Frattaroli ("Frattaroli") is, and was at all relevant times the Company's Vice President and Chief Financial Officer.

(c)    Defendant Stephen Carter ("Carter") is, and was at all relevant times the Company's Vice President, Chief Scientific Officer and Director.

9.    Defendants Masiz, Frattaroli and Carter are referred to herein collectively as the "Individual Defendants." The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Vaso Active's quarterly reports, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market. Each defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them but not to the public, each of these defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations which were being made were then materially false and misleading.

10.    It is appropriate to treat the Individual Defendants as a group for pleading purposes and to presume that the false, misleading and incomplete information conveyed in the Company's public filings, press releases and other publications as alleged herein are the collective actions of the narrowly defined group of defendants identified above. Each of the above officers of Vaso Active, by virtue of their high-level positions with the

3

Company, directly participated in the management of the Company, was directly involved in the day-to-day operations of the Company at the highest levels and was privy to confidential proprietary information concerning the Company and its business, operations, products, growth, financial statements, and financial condition, as alleged herein. Said defendants were involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein, were aware, or recklessly disregarded, that the false and misleading statements were being issued regarding the Company, and approved or ratified these statements, in violation of the federal securities laws.

11. As officers and controlling persons of a publicly-held company whose common stock was, and is, registered with the SEC pursuant to the Exchange Act, and was traded on the NASDAQ National Market (the "NASDAQ"), and governed by the provisions of the federal securities laws, the defendants each had a duty to disseminate promptly, accurate and truthful information with respect to the Company's financial condition and performance, growth, operations, financial statements, business, products, markets, management, earnings and present and future business prospects, and to correct any previously-issued statements that had become materially misleading or untrue, so that the market price of the Company's publicly-traded securities would be based upon truthful and accurate information. The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

12. The Individual Defendants participated in the drafting, preparation, and/or approval of the various public and shareholder and investor reports and other communications complained of herein and were aware of, or recklessly disregarded, the

4

misstatements contained therein and omissions therefrom, and were aware of their materially false and misleading nature. Because of their Board membership and/or executive and managerial positions with Vaso Active, each of the defendants had access to the adverse undisclosed information about Vaso Active's business prospects and financial condition and performance as particularized herein and knew (or recklessly disregarded) that these adverse facts rendered the positive representations made by or about Vaso Active and its business issued or adopted by the Company materially false and misleading.

13.    The Individual Defendants, because of their positions of control and authority as officers and/or directors of the Company, were able to and did control the content of the various SEC filings, press releases and other public statements pertaining to the Company during the Class Period. Each Individual Defendant was provided with copies of the documents alleged herein to be misleading prior to or shortly after their issuance and/or had the ability and/or opportunity to prevent their issuance or cause them to be corrected. Accordingly, each of the Individual Defendants is responsible for the accuracy of the public reports and releases detailed herein and are therefore primarily liable for the representations contained therein.

14.    Each of the defendants is liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Vaso Active securities by disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme: (i) deceived the investing public regarding Vaso Active's business, operations, management and the intrinsic value of Vaso Active securities; (ii) enabled Vaso Active, through an initial public offering and private

5

placement, to raise approximately $15.5 million in proceeds; and (iii) caused plaintiff and other members of the Class to purchase Vaso Active securities at artificially inflated prices.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

15.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of all those who purchased or otherwise acquired the securities of Vaso Active during the Class Period and who suffered damages (the "Class"). Excluded from the Class are defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns and any entity in which defendants have or had a controlling interest.

16.    The members of the Class are so numerous that joinder of all members is impracticable. According to the Company's report filed on Form 10-Q with the SEC on February 29, 2004, a representative point during the Class Period, Vaso Active had approximately 58,407,690 million shares of common stock outstanding as of February 29, 2004. While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Vaso Active or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

17.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

6

18.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

19.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)    whether the federal securities laws were violated by defendants' acts as alleged herein;

(b)    whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations, financial condition and management of Vaso Active; and

(c)    whether defendants acted knowingly or recklessly in making materially false and misleading statements during the Class Period;

(d)    whether the market prices of the Company's common stock was artificially inflated or distorted during the Class Period because of defendants' conduct complained of herein; and

(e)    whether the members of the Class have sustained damages and the proper measure of damages.

20.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of

the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

### Fraudulent Scheme and Course of Business

21.    Each defendant is liable for (i) making false statements, or (ii) failing to disclose adverse facts known to him about Vaso Active. Defendants' fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Vaso Active securities was a success, as it (i) deceived the investing public regarding Vaso Active's prospects and business; (ii) artificially inflated the prices of Vaso Active securities; (iii) enabled Vaso Active, through an initial public offering and private placement, to raise approximately $15.5 million in proceeds; and (iv) caused plaintiff and other members of the Class to purchase Vaso Active common stock at inflated prices.

## SUBSTANTIVE ALLEGATIONS

### Background Facts

22.    Vaso Active describes itself as "an early-stage company focused on commercializing, marketing and selling over-the-counter (OTC) pharmaceutical products, with a particular focus on drugs that incorporate the Vaso Active lipid encapsulated, or VALE, transdermal delivery technology."

23.    During the Class Period, defendants misrepresented that the New England Medical Center in Boston, Massachusetts had conducted "independent" clinical trials confirming that its foot cream product, Termin8, was a "remarkably effective cure." In truth, the New England Medical Center conducted no trial on Termin8 and only analyzed the study for a fee. Moreover, the clinical trial was more than six years old and had been

8

conducted by a single researcher who was not independent, but rather a lone podiatrist hand-picked by Vaso Active's parent company, BioChemics.

24.    On April 1, 2004, the Securities and Exchange Commission ("SEC") announced that it was suspending the trading of Vaso Active stock due to questions regarding the accuracy of assertions made by Vaso Active in press releases, its annual report, its registration statement and public statements to investors.

25.    On April 16, 2004, the SEC permitted the stock to resume trading. It resumed trading on the over-the-counter bulletin board exchange (the "OTC-BB market") at $1.99, a 73.8% drop in share price.

## Materially False And Misleading
## Statements Issued During The Class Period

26.    The Class Period begins on December 11, 2003. On that day, Vaso Active announced that it had successfully completed its initial public offering and raised $7.25 million through offering of 1,450,000 shares of Class A common stock at a price of $5.00 per share. The registration statement filed with the SEC was signed by defendants Masiz, Frattaroli and Carter, and stated in part:

> "Although all of our product candidates will be entering established markets, they will be distinct and unique among existing products in those markets in that they will all incorporate the VALE technology. We intend to market these product candidates using this distinction in much the same way as our current products have been marketed.

Our current product candidates include:

| Product Classification | Product Description | Total Annual Market Size* | Development Stage |
|---|---|---|---|
| Analgesic | Topically applied analgesic | $3.1 billion | Formulation being finalized |
| Toenail fungus treatment | Termin8/Xtinguish derivative topically applied to treat toenail fungus | $800 million | Formula finalized |
| Acne treatment | Topically applied, anti-bacterial, anti-inflammatory Transdermally delivered Hydrocortisone | $325 million | In development |
| First aid treatment | Transdermally delivered anti-bacterial and Hydrocortisone | $395 million | Formula finalized |
| Hand and body lotion | OTC skin hydration | $1.06 billion | Formula finalized |
| Psoriasis | Transdermal anti-inflammatory, anti-itch and skin hydration | — | Formula in development |

In regards to the Termin8 product, the registration statement notes that:

"During the course of the 12 month period immediately following this offering, all deFEET branded product currently in circulation will either be sold or removed from circulation and replaced with an identical product which will be commercialized, marketed and sold by us under the name Termin8 and/or Xtinguish. The formulation and functionality of Termin8 and Xtinguish will be identical to that of deFEET. Any reference in this prospectus relating to the functionality, formulation or performance of deFEET shall apply in all respects to Termin8 and Xtinguish.

All three of these products have been through the research and development, pre-clinical study and clinical trial stages and have received FDA approval. They are either currently being marketed and

10

commercialized or will enter the marketing and commercialization phase upon the consummation of this offering.

**deFEET** is a topically-applied, transdermal athlete's foot anti-fungal medication designed to eliminate athlete's foot infection in less than 10 days. It employs the VALE drug delivery system to effectively and efficiently deliver a mild antifungal agent called Tolnaftate into the skin surrounding the affected area. **In a pilot clinical trial, supervised by independent physicians and analyzed by the New England Medical Center in Boston, MA** [emphasis added], 20 severely infected athlete's foot patients were treated and studied over a 42-day period. There were two groups in the study, one treated with deFEET and the other with Schering-Plough's Tinactin®. In this study, deFEET eliminated the infection in 90% of the test group in 7 days and 100% of its patient population in 10 days. Tinactin®, which also uses Tolnaftate in the same concentration as deFEET, required 42 days to cure its first patient. These results demonstrate the ability of the VALE technology to deliver Tolnaftate much more effectively than a product not utilizing VALE technology."

27.    On December 16, 2003, Vaso Active announced that it had successfully closed on the placement of all of its 217,500 over-allotment shares, which in combination with the aforementioned 1.45 million Class A common shares enabled Vaso Active to raise over $8 million in gross proceeds.

28.    On February 19, 2004, Vaso Active announced that its Board of Directors had declared a 3 for 1 stock split. Defendant Masiz explained:

"Recently, there has been significant demand for our common stock at the institutional level. However liquidity has proved to be an obstacle. To help resolve this, the Board of Directors has declared this 3-for-1 stock split to increase our liquidity to the public market place, thus enhancing our securities' appeal to both retail and institutional investors."

29.    On March 17, Vaso Active announced that it had entered into a private placement transaction in the amount of $7.5 million with an institutional investor. Defendant Masiz stated:

"The ability to secure additional funds through the completion of this private placement gives Vaso Active Active significant new working

11

capital to augment the working capital derived from its IPO. This will enhance Vaso Active Active's capital base with which to operate and will permit the Company to take advantage of strategic opportunities that arise in the course of growing our business. In addition, **the execution of this agreement at a premium to the current market price of our common stock underscores the value of our technology to a material investor."** [Emphasis added]

30.     On March 26, 2004 Vaso Active filed its annual report with the SEC on

Form 10-KSB for the period ending December 31, 2003. The annual report was signed

by defendants Masiz, Frattaroli and Carter, and stated in regards to Termin8:

> "Termin8 is a topically-applied, transdermal anti-fungal medication designed to eliminate athlete's foot infection in less than 10 days. Termin8 employs the VALE transdermal drug delivery system to effectively and efficiently deliver a mild anti-fungal agent called Tolnaftate into the skin surrounding the affected area. **Each of our three products has been through the research and development stage and are qualified under FDA OTC monographs and have been registered as such."** [Emphasis added]

31.     In an investor conference call on the same day, defendant Masiz stated

that annual revenues were projected to increase from $53,300 to $12 million based on

"strategic alliances" to launch its products, including Termin8.

32.     Defendants made materially false and misleading statements when they

misrepresented the nature of the clinical trials of Termin8 as "independent" and the

likelihood of FDA approval success, and then based their financial projections upon such

misrepresentations, leading to an artificial inflation of the Company's future financial

prospects. These statements were false and misleading in that:

> a)     the New England Medical Center conducted no trial on Termin8 and only analyzed the study for a fee. Moreover, the New England Medical Center was unable to draw any conclusions as to the effectiveness of the Termin8.

12

b)    the "clinical trial" lacked adequate control mechanisms and failed to comply with standards established to perform scientific research and therefore could not be used to conclude Termin8's adequacy, effectiveness or approvability of the product. Rather, the "clinical trial" was a six year old biased trial structured solely for the purpose of reaching a conclusion that supported the product now marketed as Termin8.

c)    The "clinical trial" was not independent. Rather, the "clinical trial" was conducted by a single researcher who was not independent, but rather a podiatrist hand-picked by Vaso Active's parent company, BioChemics.

d)    The American Associate of Medical Foot Specialists (the "AAMFT") "endorsement" of deFEET, later applied to Termin8, provided no additional assurances of the quality of the product or the likelihood of its adoption among podiatrists or those in the medical community, as implied by defendants, because the AAMFT is neither widely known by nor respected in the medical community, and consequently, provides no representation of the medical community. In fact, the association refuses to disclose the number of members it has. The AAMFT was an "association" headquartered in a hotel until it was moved to the President's medical office. Moreover, AAMFT's continued endorsement of

13

Termin8 is subject to a donation by Vaso Active to an AAMFT scholarship program

## THE TRUTH EMERGES

33.    Near the end of the Class Period, with the stock trading in full frenzy as a result of the defendants false and misleading statements, hints of the truth regarding the nature of the claims and statements made by defendants began to appear. None the less, defendants continued to perpetrate their fraudulent scheme by directly responding to and/or denying statements which cast doubt on the validity of the Company's claims.

34.    On February 27, 2004 *TheStreet.com* published an article entitled "Vaso Active's Odd Pedigree" that stated in relevant part:

A familiar stench wafts from Vaso Active, the small Massachusetts company that claims to have developed a new treatment for athlete's foot.

\*        \*        \*

Perhaps investors also should worry.

For starters, there's the debate about just how amazing its foot-fungus-fighting treatment Termin8, really is.

The company contends the product, with its "revolutionary transdermal drug delivery technology," is a "highly advanced and remarkably effective cure for Athlete's Foot." The company has such high hopes for Termin8, which retails for $19.99, it recently told investors that it foresees a $365 million market for the product. Furthermore, Vaso Active boasts on its Web site that Termin8 has won the endorsement of The American Association of Medical Foot Specialists.

In a recent interview, David Z. Ascher, a New York podiatrist and the foot association's president, seemed more impressed with Termin8's packaging.

"There is no such thing as a miracle cure," Ascher said. "It is as good as any of the other products."

The doctor continued: "The packaging is fantastic. The box is so beautiful."

14

Vaso Active might be ruing ever getting involved with Ascher, who won't say how many members are in his medical association.

Last week, Ascher told Barron's he didn't recall endorsing the company's product. He has since amended that. Ascher told the TheStreet.com this week that he was confused when he talked to Barron's because Termin8 used to be called something else, deFEET. Ascher said his association stands behind its endorsement, but now he wants Vaso Active to make a donation to an association scholarship.

Whatever the connection, Ascher's group wants no part of a controversy. "We do not want to be involved with any hanky-panky," he commented.

A Vaso Active spokesman declined to comment.

If that doesn't give investors pause, consider the cast of Wall Street characters surrounding the tiny company.

*  *  *

35. On March 3, 2004 *TheStreet.com* published an article entitled "Vaso Active Pharma Attracts Attention" that stated in relevant part:

Federal securities regulators have begun asking questions about Vaso Active Pharmaceuticals, a tiny company that has seen its stock soar 600% since going public late last year.

A Bronx, N.Y. podiatrist, who is president of The American Association of Medical Foot Specialists, said he received a telephone call Monday from the Securities and Exchange Commission about the association's endorsement of Vaso Active's main product.

Dr. David Z. Ascher said the SEC official inquired about the association's endorsement of Termin8 -- a foot cream that Vaso Active claims is "remarkably effective" in curing Athlete's Foot. Ascher didn't discuss the specifics of the phone conversation, but said his association stands behind its endorsement.

Two weeks ago, Ascher created a bit of controversy when he told Barrons he didn't recall endorsing Termin8. But a few days later, he amended those remarks. In an interview with the TheStreet.com, Ascher said he was confused when he talked to a Barron's reporter because Termin8 used to be called deFEET before Vaso Active changed the name a few months ago.

15

Ascher blamed the confusion on Vaso Active, but said the association would stick by its endorsement. The doctor, however, said he now wanted Vaso Active to make a donation to an association scholarship program. He declined to say how many members belong to the association, which appears to have no headquarters.

An SEC spokesman declined to comment on whether it is investigating Vaso Active. A spokesman for the Massachusetts-based company didn't return telephone calls.

The SEC inquiries come at a time that some on Wall Street are expressing bewilderment at the surge in Vaso Active stock, which was priced at $5 a share in a December initial public offering. Trading in the 1.6 million shares Vaso sold to the public has been frenzied, with often more than 1 million shares changing hands each day recently.

The demand for the limited supply of Vaso Active stocks strikes some on Wall Street as unusual since the company has no profits, less than $100,000 in annual sales and just seven employees. But Vaso Active's supporters contend the company is poised to deliver big profits down the road because it has developed a "revolutionary transdermal" method for delivering over-the-counter drugs.

It's worth noting that Vaso Active's parent, Biochemics, which owns about half of the company's outstanding shares, didn't have much success selling Termin8 when it was called deFeet.

However, the new name for the product should end one controversy. For several years, Biochemics has had to license the deFeet name from deFeet International, a North Carolina athletic wear company. A deFeet company official said the licensing agreement came about after the clothing retailer discovered that Biochemics was using the name without its permission.

"We saw it in some stores here and that's why we brought it up with them," said Paul Willerton, a deFeet International vice president.

Meanwhile, the surge in Vaso Active's stock could mean big bucks for a Colorado marketing executive who is supposed to be helping the company sell Termin8 and its handful of other creams and lotions.

Greg Gorman, founder and president of Commotion, a Golden, Colo.-based marketing firm, owns warrants to buy 75,000 shares of the tiny company, according to a regulatory filing Feb. 13. Vaso Active issued the warrants in January, which are priced well below the stock's current price, as part of the firm's marketing contract.

Two weeks ago, Vaso Active filed a registration statement for those 75,000 shares, which gives Gorman the right to sell them once he exercises the warrants at a total cost of $450,000.

Gorman could not be reached for comment. It's not known if he has exercised those warrants, but under securities regulations he was free to do so any time after the February filing. But with Vaso Active's shares selling for around $35, those 75,000 shares are worth $2.6 million on paper.

36.     On March 10, 2004 *TheStreet.com* published an article entitled "Vaso

Active Bends Truth About Clinical Trial" that stated in relevant part:

*          *          *

The latest mystery involves the foot cream, Termin8, that Vaso Active claims is a "remarkably effective cure" for athlete's foot. On the company's Web site, Vaso Active states: "In a clinical trial conducted at the New England Medical Center, in Boston, MA, 100% of the study subjects given TERMIN8 were cured within 10 days."

Vaso Active has pointed to the clinical trial as evidence that Termin8 and the company's "revolutionary" transdermal technology for delivering medicine through the skin will help it become a big player in the over-the-counter drug market.

Those claims are one of the reasons why shares of Vaso Active, a tiny company with just seven employees and few sales, have skyrocketed.

Trouble is, the New England Medical Center, which is affiliated with Tufts University, didn't actually do the nearly six-year-old study.

All New England Medical Center did was analyze the statistical information gathered by Vaso Active's parent company, BioChemics Inc. -- something the center does all the time for paying customers. The medical center employee who analyzed the statistics said she can't draw any conclusions about the effectiveness of the product, since she had no hand in selecting the patients and gathering the evidence.

Robin Ruthazer, the medical center employee who reviewed the statistics, said she wouldn't refer to the study as one produced by the medical center. "We just analyzed the data. It's not anything special," she said.

In fact, the person who supervised the study was a podiatrist hand-picked by BioChemics.

17

Even John Masiz, Vaso Active's president and CEO, acknowledges as much when asked about the company's claim. "We approached a podiatrist to conduct the research for us," he said.

37.    The Company continued to support its misrepresentations in light of the published reports raising questions of the validity of defendants assertions. With its stock under pressure as a result of questions raised in the market, defendants increased their effort to maintain the artificial inflation it had created through its earlier misrepresentations by publishing a statement on March 10, 2004 entitled "Vaso Active Pharmaceuticals Supports Clinical Study Claims for Athletes Foot Product: Termin8" that responded to the claims made in the *TheStreet.com* article. The March 10th statement stated in relevant part:

> VasoActive's parent company, BioChemics, Inc., conducted a clinical study in 1998 to evaluate the effectiveness of its anti-fungal product, at that time called 'deFEET', now called 'Termin8'. The study was conducted on athlete's foot patients by an individual physician, retained by Biochemics, directly comparing deFEET to Schering Plough's Tinactin product. Both products utilize the same anti- fungal drug, 1% tolnaftate, however, the deFEET also uses an over-the- counter formulation of the proprietary transdermal drug delivery system developed by BioChemics.

> In the study, ten patients were treated with deFEET and ten patients were treated with Tinactin according to the identical clinical protocol. The Division of Clinical Care Research at the Tufts-New England Medical Center in Boston, MA analyzed the results of this study. The data demonstrated that all ten of the deFEET patients had eliminated their clinical symptoms by day 10 following the initiation of treatment. In contrast, one Tinactin-treated patient of ten was cured of symptoms on day 42.

> According to the August 1998 letter supplied to BioChemics by Robin Ruthazer from the New England Medical Center summarizing the study, the trial results indicated, among other things, "the 14-day cure rate among patients treated with deFEET (10/10) was statistically greater than that among patients using Tinactin (0/10), p = 0.001 (chi-square test)."

> Among other inaccuracies in an article published by Matthew Goldstein in TheStreet.com on March 9, 2004, Mr. Goldstein questions the validity of

the clinical study described above and the intentions of the company upon reporting the findings. BioChemics and VasoActive Pharmaceuticals, the company responsible for marketing Termin8, are pleased to stand behind the data and the statements made by the management team in the company's recent IPO prospectus document. The company remains confident in the clinical effectiveness of the Termin8 product.

38.    On March 26, 2004 Vaso Active announced earnings and held a conference call in which it stated, among other things, that the Company expects sales to soar from $53,300 to $12 million in the next year because of a number of "strategic" deals it has reached to market Termin8 and other lotions that use its "revolutionary" transdermal delivery system. See ¶30-31. Despite the affirmations made on March 10, 2004 regarding the validity of its previous statements and the Company's positive statements made on March 26, 2004, the Company abruptly ended the conference call it hosted on March 26 without fielding questions from investors or analysts, which is extremely rare.

39.    On April 1, 2004 the SEC announced that it was suspending the trading of Vaso Active stock due to questions regarding the accuracy of assertions made by Vaso Active in press releases, its annual report, its registration statement and public statements to investors. At the time trading was halted, the stock was trading at $7.59. Reporting on the halt, *Reuters* published an article entitled "UPDATE - SEC suspends trading in Vaso Active stock" that stated in relevant part:

> U.S. securities regulators on Thursday halted trading of Vaso Active Pharmaceuticals Inc., a marketer of over-the-counter pharmaceuticals, through April 15.
>
> The Securities and Exchange Commission questioned assertions made by the Danvers, Massachusetts-based company of regarding an FDA approval of certain key products, among other issues.

Vaso Active said in a statement it is "committed to providing the company's full cooperation," but that it would be "inappropriate to provide a more detailed comment at this time."

The SEC said it questioned the accuracy of assertions made in the company's press releases, annual report, registration statement, and public statements to investors.

Vaso shares closed at $7.59 Wednesday on the Nasdaq.

40.    On April 16, 2004, the SEC permitted the stock to resume trading. It resumed trading on the OTC-BB market at $1.99, a 73.8% drop in share price.

## SCIENTER ALLEGATIONS

41.    As alleged herein, defendants acted with scienter in that defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, defendants, by virtue of their receipt of information reflecting the true facts regarding Vaso Active, their control over, and/or receipt and/or modification of Vaso Active's allegedly materially misleading statements and/or their associations with the Company which made them privy to confidential proprietary information concerning Vaso Active, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD-ON-THE-MARKET DOCTRINE

42.    At all relevant times, the market for Vaso Active securities was an efficient market for the following reasons, among others:

20